# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00804-CV

---

**Christopher Novosad d/b/a Creative Kahuna f/k/a TIKI2, Appellant**

**v.**

**LSG Vodka LLC d/b/a Perspectv Distilling Co., Appellee**

---

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-18-006059, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Christopher Novosad challenges the trial court's denial of his Texas Citizens Participation Act (TCPA) motion to dismiss LSG Vodka LLC's claims against him. *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011;[1] *see also id*. § 51.014(a)(12) (providing for interlocutory appeal from denial of TCPA motion). For the reasons stated herein, we affirm in part, reverse and render in part, and remand.

---

[1] The Legislature amended the TCPA in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, secs. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010, 2019 Tex. Sess. Law Serv. 684, 684–88 (codified at Tex. Civ. Prac. & Rem. Code Ch. 27). Because this suit was filed before the effective date of the amendments, September 1, 2019, it is governed by the statute as it existed before the amendments. *See id.* § 11–12. All citations in this opinion are to the version in effect before the 2019 amendments.

## Background

This interlocutory appeal arises out of series of events and transactions involving the creation and development of vodka brands and products. Novosad owns a company that offers commercial services in graphic and website design and website maintenance. In early 2015, Christopher Greta, through his company Flagrant Brands, hired Novosad to produce logos, labels, and general marketing designs for a prospective product called "Sh!t Vodka" and to build a website for that product at "shitvodka.com." Novosad did so and launched the website in December 2015.

Around that same time LSG, through its CEO W. Scott Murray, began negotiating to buy Flagrant Brands or the "Sh!t Vodka" name, which Flagrant had applied to trademark. During these negotiations, LSG filed its own trademark application for the name "The Sh!t." It did so on the same day that Flagrant Brand's trademark application for "Sh!t Vodka" was set to lapse. According to LSG, it filed its application to protect the name after discovering that Flagrant Brands had allowed its application to lapse. Novosad maintains that LSG encouraged Greta to allow Flagrant Brands's application to lapse. Either way, negotiations ended soon after LSG's application. Ultimately, after obtaining all the necessary licenses, LSG Vodka began producing and selling "The Sh!t Vodka" in May 2017.[2]

Meanwhile, Greta, who allegedly remained interested in developing his vodka brand, directed Novosad to "put up a quick shit vodka web site and offer some shirts . . . to make it look like" he would soon be producing the vodka. Novosad launched the new content, which

---

[2] LSG Vodka's trademark application for "The Sh!t" was suspended under a "scandalous advisory refusal" in October 2016. *See* 15 U.S.C. § 1052(a) (excluding immoral or scandalous marks from federal trademark registration); *see also Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) (holding 15 U.S.C. § 1052 unconstitutional).

he describes as "juvenile and provocative," on the same "shitvodka.com" website around May 2017. Novosad also allegedly purchased and established a website at "theshtvodka.org"—LSG's website was "theshtvodka.com"—and had traffic to that website redirected to the "shitvodka.com" website.

Later that same year, Novosad posted a comment on LSG's "The Sh!t Vodka" Facebook page accusing LSG of being an "IP thief."[3] This post, which Novosad insists was taken down after only 10 or 20 minutes, was allegedly in response to LSG's filing suit against Greta and Flagrant Brands for damages allegedly incurred during the failed purchase negotiations and by the "shitvodka.com" website content and redirection tactics. The parties settled the case in June 2018 and, soon after, LSG filed the underlying suit against Novosad for damages caused by his Facebook comment and by his participation in the "shitvodka.com" website-related activities. Specifically, LSG asserted claims for tortious interference with business relations, tortious interference with contract and prospective contracts, business disparagement, injury to business reputation, conspiracy, and defamation.[4]

Novosad filed a motion to dismiss LSG's claims, asserting that the claims were subject to dismissal under the TCPA because they were based on Novosad's exercise of the rights of association and free speech. *See id.* § 27.003 (a) (authorizing TCPA motion to dismiss). LSG Vodka responded to the motion with supporting evidence. A few days later, LSG amended its original petition to assert claims for tortious interference with prospective business, business

---

[3] Based on the pleadings below and the briefs to this Court, the parties agree on the essential content of the Facebook comment, but they have not included a screenshot or other evidence showing the exact language used.

[4] LSG's original petition describes this claim as "liable [sic], slander, defamation." For clarity's sake and because the distinctions do not affect our analysis, we refer to this as a defamation claim.

3

disparagement, injury to business reputation, and conspiracy. LSG's live petition omitted its previously asserted claims for tortious interference with contract and defamation, thus nonsuiting those claims. *See FKM P'ship, Ltd. v. Board of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 632 (noting that filing amended petition that omits a cause of action effectively nonsuits the omitted claim as of the time the pleading is filed). Novosad then amended his motion to dismiss by including an assertion that he was entitled to court costs and attorney fees related to the two abandoned claims even though LSG had nonsuited those claims. Ultimately, Novosad's motion was denied by operation of law, *see* Tex. Civ. Prac. & Rem. Code § 27.008(a), and this interlocutory appeal ensued.

## TCPA

"The [TCPA] protects citizens who [associate,] petition, or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). That protection comes in the form of a motion to dismiss, subject to expedited review, for "any suit that appears to stifle the defendant's" exercise of those rights. *Id*. Reviewing a TCPA motion to dismiss requires a three-step analysis. As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). The TCPA applies if the nonmovant's claim "is based on, relates to, or is in response to the [moving] party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association" as those phrases are defined in the TCPA. *Id.* If the moving party meets that burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id*. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defense

4

by a preponderance of the evidence. *Id*. § 27.005(d). If the nonmovant fails to carry its burden—or if the movant establishes the essential elements of a valid defense under section 27.005(d)—the trial court must dismiss the suit. *Id.* § 27.005(b)–(d).

Intertwined with and overlying this dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See id*. § 27.010 (establishing four exemptions). At issue here, section 27.010 provides that the TCPA:

> does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id*. § 27.010(b) (commonly referred to as the "commercial speech" exemption). This and the other section 27.010 exemptions are "wholly unnecessary unless the TCPA applies" and, as discussed above, "the TCPA only applies when the claim is based on the defendant's exercise of the right of free speech, association, or to petition." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (citing Tex. Civ. Prac. & Rem. Code §§ 27.001(1)–(4), .003(a)). Thus, when an exemption is invoked, the trial court must consider its applicability in the context of the movant having met its initial burden under the first step of the dismissal process. *See id*. (construing "commercial speech" exemption). If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action. *See* Tex. Civ. Prac. & Rem. Code § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections).

In deciding whether a legal action is subject to or should be dismissed under the TCPA's burden-shifting process, the trial court "shall consider the pleadings and supporting and

opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review de novo the trial court's determinations that the parties met or failed to meet their respective burdens of proof under section 27.005. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

**Discussion**

Novosad raises three issues on appeal. In his first, Novosad asserts that the trial court erred by not automatically awarding him court costs, attorney fees, and sanctions in connection with LSG's claims for tortious interference with contract and defamation once LSG abandoned those claims. In his second and third issues, Novosad contends that the trial court erred in denying his motion to dismiss because LSG failed to present a prima facie case for each essential element of its claims and because the TCPA's commercial-speech exemption does not apply to its claims against him. In response, LSG argues that the TCPA does not apply to its claims, either because Novosad did not meet his burden or because the claims fall under the commercial-speech exemption, and that, if it does apply, LSG established a prima facie case for each element of its claims.

**Abandoned Claims**

Novosad asserts that the trial court erred in denying him the relief he requested in his motion to dismiss in connection with LSG's claims for tortious interference with contract and defamation because LSG abandoned those claims. LSG does not dispute that it abandoned these claims but argues that mere abandonment of claims in the aftermath of a TCPA motion to dismiss does not *automatically* entitle the movant to costs, attorney fees, and sanctions. We agree.

6

The nonsuit of claims challenged in a TCPA motion to dismiss does not "entirely moot" the TCPA motion because the movant may "continue to pursue their requests for attorney's fees incurred in defending those claims prior to their voluntary dismissal, as well as for the sanctions the Act would prescribe." *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 293 (Tex. App.—Austin 2018, pet. denied). But whether Novosad is entitled to the attorney fees and sanctions depends on the outcome of the TCPA's burden-shifting process—i.e., it depends on whether Novosad met his burden of showing that the TCPA applies, whether the claims are subject to the commercial-speech exemption, and whether LSG failed to present a prima facie case for each essential element of those claims. *See* Tex. Civ. Prac. & Rem. Code §§ 27.005 (describing burden-shifting process to determine whether legal action is subject to dismissal), .009(a) (requiring award of attorney fees, court costs, and other expenses if legal action is subject to dismissal under TCPA); *Amini v. Spicewood Springs Animal Hosp., LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *5–6 (Tex. App.—Austin Nov. 7, 2019, no pet.) (mem. op.) (applying burden-shifting process to abandoned claims after holding that non-movant's abandonment of claims did not bar movant from seeking TCPA remedies as to those claims). We address these issues next.

**Does the TCPA Apply to LSG's Claims?**

As noted, Novosad's initial burden (also described in case law in terms of demonstrating the TCPA's "applicability," *see, e.g.*, *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 897–98, 898–902 (Tex. 2017)), consisted of "show[ing] by a preponderance of the evidence" (1) that LSG has asserted a "legal action" (2) that "is based on, relates to, or is in response to" (3) either Novosad's "exercise of the right free speech" or his "exercise of the right

7

of association." *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). There is no dispute that LSG's lawsuit seeking money relief, or alternatively each of its component claims for such relief, is a "legal action," a term that the TCPA defines to include "a lawsuit, cause of action, petition, or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6) (defining "legal action"). The remaining elements of Novosad's initial burden can be established if LSG's claims are factually predicated on conduct that falls within either the "exercise of the right of association" by Novosad or his "exercise of the right of free speech" as the TCPA defines those terms. *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 197 (Tex. App.—Austin 2017, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code § 27.001(2) ("'Exercise of the right of association' means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern."), (3) ("'Exercise of the right of free speech' means a communication made in connection with a matter of public concern."). As shown in the chart below, the parties do not dispute that LSG's individual claims are factually predicated on Novosad's Facebook comment and on his work on and related communications regarding the the.shitvodka.com website, particularly the acquisition of a website similar to LSG's and the redirection of that website to www.shitvokda.com ("website-related activities"):

| Claim | Predicate for claim |
|---|---|
| Tortious interference with prospective business | Facebook comment<br>Website-related activities |
| Business disparagement | Facebook comment<br>Website-related activities |
| Injury to business reputation | Website-related activities |
| Conspiracy | Website-related activities |

8

| (abandoned) Tortious interference with contract | Website-related activities |
|---|---|
| (abandoned) Defamation | Facebook comment |

Novosad contends that he was exercising his right of free speech as defined by the TPCA when he posted the Facebook comment and that he was exercising his right of association as defined by the TCPA when he engaged in the website-related activities. We will address each right in turn.

*"Exercise of the right of free speech"*

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). "'Matter of public concern' includes an issue related to . . . a good, product, or service in the marketplace." *Id.* § 27.001(7). LSG does not dispute that the Facebook comment is a "communication," but it disputes that the comment involves a "matter of public concern" because the comment was not "about an actual product that [LSG] sells," but was "a statement about the owners of LSG." But the TCPA does not require that the statement specifically mention or be about a good or product in the marketplace. Instead, it simply specifies that the statement be "in connection with" "an issue related to" a good or product in the marketplace. *See Id.* § 27.001(3), (7); *Coleman*, 512 S.W.3d at 901 (adhering to plain text of "matter of public concern"). A Facebook comment about the business practices of a company that produces, markets, and sells vodka in the marketplace is, under the TCPA's text, a statement *connected to* an issue *related to* a product in the marketplace. Thus, with respect to the causes of action predicated on his Facebook comment, Novosad met his initial burden under the TCPA burden-shifting framework. Accordingly, and because LSG does not contend that the TCPA's

9

"commercial speech" exemption applies to Novosad's Facebook comment, we hold that the TCPA applies to LSG's claims for tortious interference with prospective business, business disparagement, and defamation to the extent those claims are predicated on Novosad's Facebook comment.

*"Exercise of the right of association"*

The TCPA defines "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). LSG does not dispute that the website-related activities involved communication between individuals, but it maintains that the interests of two tortfeasors—i.e., Novosad and Greta—who join together to commit a tort are not "express[ing], promot[ing], pursu[ing], or defend[ing] common interests." *See Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576–77 (Tex. App.—Fort Worth 2019, pet. denied) (rejecting TCPA argument that two conspirators joining together to commit a tort fall under "exercise of the right of association" because "common interest" requires sharing by the public or at least a group). LSG also asserts that, even if Novosad's website-related activities constitute "exercise of the right of association," its claims predicated on this conduct are exempted from the TCPA under the "commercial speech" exemption. Because it is dispositive of the claims predicated on the website-related activities, we begin by addressing the "commercial speech" exemption.

The Texas Supreme Court has construed the "commercial speech" exemption to apply when (1) the defendant (here, Novosad) was primarily engaged in the business of selling or leasing goods or services, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the

10

kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct was actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman*, 546 S.W.3d at 688. Regarding the first element, there is no dispute that Novosad is in the business of providing, for a fee, graphic-design and website-building services to his clients. In an affidavit in the record before us, Novosad states that he is the owner of a business that provides companies with a variety of services, including "put[ting] together digital presentations, maintin[ing] websites and help[ing] companies maintain a presence on social media as well as search engine relevance." As such, he is "primarily engaged in the business of selling . . . services." Novosad argues that he does not meet this first element because "he did not create or publish the [shitvokda.com] site to sell goods or services *at all*, much less that selling or leasing was his 'primary' engagement." This argument does not inform our analysis and, even if it did, the specifics of the conduct at issue are the subject of the remaining elements. The first *Castleman* element simply asks whether the defendant is primarily engaged in the business of selling or leasing goods or services. *See id.* And by his own words, Novosad is primarily engaged in such conduct.

The second *Castleman* element asks whether the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services. *See id*. The conduct on which LSG bases its claims here is Novosad's website-related activities, which included creating and designing the shitvodka.com website, acquiring the theshtvodka.com website, and redirecting that similarly named website to Flagrant Brands's shitvodka.com website. The record establishes that Novosad engaged in this conduct at Greta's direction because he hired Novosad to provide graphic-design and website-building services for the Sh!t Vodka brand. In fact, Novosad's affidavit states that he "was hired

11

by Christopher Greta to . . . make logos, labels and general marketing designs" and to "build[] a website" and that he launched the website at Greta's direction. Thus, Novosad engaged in the website-related activities in his capacity as a seller of graphic-design and website-building services.

Despite this, Novosad asserts that LSG cannot meet the second *Castleman* element because:

> LSG clearly alleges that any business concerns Novosad may have had in the past with Greta had terminated months or years before any alleged torts, and that the Website was only "forgotten remains." Further, Novosad is not in the liquor business, he did not own or the Website, and he was not in competition with LSG.

(Internal citations to clerk's record omitted.) As we understand this argument, we note that the relevant inquiry here is not when the alleged conduct occurred, but whether Novosad engaged in the conduct in his capacity as a seller of website-related services. Further, whether Novosad is in the liquor business or owns the website is not relevant to the second element.

The third *Castleman* element examines whether "the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides." *Id.* Because the "sale . . . of . . . services" is a type of "commercial transaction" contemplated by the exemption, *see id.* at 690 (explaining that "'commercial transaction' is a catch-all for other commercial transactions not specifically listed" in section 27.010(b)), this element can be restated as asking, relevant here, whether the statement or conduct at issue arose out of the sale of services that the defendant provides. Novosad argues that this element is not established because his conduct related to alleged sale of t-shirts and promotion of vodka. But regardless of whether that is an accurate characterization of his conduct, the record establishes

12

that LSG's claims are based on Novosad's website-related activities and that conduct arose directly from and as part of his sale of website-design services to Greta.

Finally, the third *Castleman* element requires that the intended audience of the statement or conduct was actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Id.* at 688. The intended audience of Novosad's website-related activities included Greta and Flagrant Brands because Novosad engaged in the activities at Greta's behest and as part of his employment by Greta and Flagrant Brands. Relatedly, Flagrant Brands was undisputedly an "actual customer" of Novosad's given that Greta and Flagrant Brands hired Novosad to perform the website-related activities. *See American Heritage Dictionary of the English Language* 449 (5th ed. 2011) (defining "customer" as "one that buys goods or services, as from a store or business"); *see also Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n* , 511 S.W.3d 28, 34–35 (Tex. 2017) (explaining that where statute does not define key term, we must apply "common, ordinary meaning unless a contrary meaning is apparent"). Novosad argues that this fourth element is not established because the intended audience was Flagrant Brands's customers. Flagrant Brands's customers may be the ultimate intended audience, but Greta and Flagrant Brands were also the intended audience of Novosad's work, and *Castleman* does not require that there be only one intended audience.

In sum, without addressing whether the Novosad met his initial TCPA burden, we hold that LSG has established that its claims predicated on Novosad's website-related activities fall under the TCPA "commercial speech" exemption and, as a result, that the TCPA does not apply to those claims. Accordingly, the trial court did not err in denying Novosad's motion to dismiss as to LSG's claims for tortious-interference, business-disparagement, injury-to-business-

13

reputation, and conspiracy claims to the extent those claims are predicated on Novosad's website-related activities.

**Did LSG Establish a Prima Facie Case?**

Having determined that Novosad met his burden of showing that the TCPA applies to LSG's claims for tortious interference with prospective business, business disparagement, and defamation (to the extent that the claims are predicated on Novosad's Facebook comment), we must next consider whether LSG met its burden of "establish[ing] by clear and specific evidence a prima facie case for each essential element of" those claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). The words "clear" and "specific" in the context of the TCPA mean, for the former, "unambiguous," "sure," or "free from doubt" and, for the latter, "explicit" or "relating to a particular named thing." *Lipsky*, 460 S.W.3d at 590. A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* "It is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. (internal quotation marks omitted). To determine whether this burden is met, courts are to consider the pleadings and any supporting and opposing affidavits. *Id.* § 27.006(a). However, "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." *Id*. "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for [his] claim." *Lipsky*, 460 S.W.3d at 590–91.

14

*Tortious interference with prospective business*

The elements of a claim for tortious interference with prospective business relations are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). On appeal, Novosad contends that LSG failed to establish, by clear and specific evidence, a prima facie case that his Facebook comment was the proximate cause of LSG's injuries. We agree.

LSG's original petition does not include specific facts to support its contention that Novosad's Facebook comment prevented any prospective business relations between LSG and a third party. The petition's only reference to the Facebook comment in connection with this cause of action is its allegation that Novosad posted the "IP thief" comment to "hurt LSG's pla[c]e in commerce and to prevent future relationships with bars, liquor stores, and consumers." And the only reference to the causation element is the conclusory statement that "[Novosad]'s tortious conduct proximately caused [LSG]'s injury." LSG's response to Novosad's motion to dismiss lists the elements of the claim but does not even state the conclusory assertion that Novosad's Facebook comment caused its injury. And in the affidavit attached to its response, LSG's CEO Scott Murray simply avers that Novosad posted the comment and that he received calls from family members asking him why he was being called a thief on Facebook. The only causation evidence in the affidavit relates to Novosad's website-related activities, not to his

15

Facebook comment. In fact, Murray states that "the redirected website was the only possible marketing [its distributor and sellers] could have seen." In other words, the affidavit establishes that any damages it incurred were the result of the website-related activities, not the Facebook comment. Finally, although not part of the pleadings and affidavits before the trial court, we note that LSG's appellate brief does not address how it established this element aside from making the conclusory statement that Novosad's "interference proximately caused [LSG]'s injury." Instead, the brief focuses solely on Novosad's website-related activities without mentioning the Facebook comment.

In sum, there is no evidence in the record to show that Novosad's Facebook comment prevented any prospective business relations between LSG and a third party. Accordingly, LSG failed to meet its burden of establishing by clear and specific evidence the causation element of its claim for tortious interference with prospective business relations predicated on Novosad's Facebook comment. Therefore, the trial court erred in denying Novosad's motion to dismiss as to this claim. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

*Business disparagement*

To prevail on a business-disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about the plaintiff, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Lipsky*, 460 S.W.3d at 592. On appeal, Novosad contends that LSG failed to establish, by clear and specific evidence, a prima facie case that Novosad's Facebook comment resulted in special damages to the plaintiff. We agree.

Special damages are "synonymous with economic damages and are distinguishable from general damages. General damages are recoverable under a defamation

16

claim for non-economic losses, such as loss of reputation and mental anguish." *Lipsky*, 460 S.W.3d at 593 n.11 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013)). General averments of direct economic losses and lost profits, without more, do not satisfy the minimum requirements of the TCPA. *Id.* Instead, it is necessary to show specific facts illustrating how the alleged remarks about LSG actually caused such losses. *See id.* LSG's live petition does not include specific facts to support its contention that the Facebook comment resulted in special damages to LSG. The only references to the Facebook comment in connection with the business-disparagement claim are the conclusory statements that "[Novosad] published the [comment] on Facebook calling LSG an "IP thief" with malice and intent to disparage and interfere in the economic interest of the plaintiff" and that "[LSG] suffered actual damages and special damages due to [Novosad]'s conduct." The petition's factual allegations regarding this claim relate solely to Novosad's website-related activities: "[LSG]'s distributor shared concerns it had received from its customer regarding the marketing of the product." LSG's response to Novosad's motion to dismiss does not address special damages. And in the affidavit attached to the response, Murray simply avers that Novosad posted the comment and that he received calls from family members asking him why he was being called a thief on Facebook. Otherwise, the affidavit focuses on how Novosad's website-related activities caused damages. In fact, Murray states that "the redirected website was the only possible marketing [its distributor and sellers] could have seen." In other words, the affidavit establishes that any damages it incurred were the result of the website-related activities, not the Facebook comment. Finally, although not before the trial court, we note that LSG's appellate brief only makes the conclusory assertion that it "was damaged in that it lost potential business. . . . Had [LSG] not interfered, this brand would have had support from the distributor, been picked up by the chain stores . . . and been even more

17

successful. [LSG] was damaged in that in order to mitigate its damages, it was forced to rebrand at significant cost." But general averments of direct economic losses and lost profits, without more, do not satisfy the minimum requirements of the TCPA. *Lipsky*, 460 S.W.3d at 593 (noting that plaintiff failed to allege "specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses."

In sum, there is no evidence in the record to show that LSG suffered special damages as a result of Novosad's Facebook comment. Accordingly, LSG failed to meet its burden of establishing, by clear and specific evidence, a prima facie case for the special-damages element. Therefore, the trial court erred in denying Novosad's motion to dismiss as to its business-disparagement claim predicated on the Facebook comment. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

*Defamation*

The elements of a claim for defamation include: (1) the defendant published a false statement, (2) that defamed the plaintiff, (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual, actual malice if the plaintiff is a public figure), and (4) damages (unless the statement constitutes defamation per se). *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *Lipsky*, 460 S.W.3d at 593). Novosad contends that LSG failed to establish, by clear and specific evidence, a prima facie case as to the requisite degree of fault. We agree.

LSG's original petition does not include specific facts to support its contention that Novosad acted negligently or maliciously with regard to the truth of the Facebook comment. The only reference to the requisite degree of fault in the original petition is the conclusory statement that "[Novosad] negligently or maliciously published false, defamatory statements of

18

fact about (LSG)." General allegations that merely recite the elements of a cause of action are not sufficient for TCPA purposes. *See Lipsky*, 460 S.W.3d at 590–91 ("[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for [his] claim."). Similarly, LSG's response to the motion to dismiss does not address the requisite degree of fault other than to state that the elements of a defamation claim include proving that the defendant acted with negligence regarding the statement's truth. Finally, although not before the trial court, we note that LSG's brief on appeal does not address whether it established a prima facie case regarding the requisite degree of fault other than to list the elements of a defamation claim. Its appellate brief does allege that Novosad posted the Facebook comment intentionally, but it does so in the context of establishing the malice element of its business-disparagement claim, not to show that Novosad acted with the requisite degree of fault regarding the truth of the Facebook comment.

In sum, there is no evidence in the record to show that Novosad acted with the requisite degree of fault regarding the truth of the statement that LSG was an "IP thief." Accordingly, LSG failed to meet its burden of establishing, by clear and specific evidence, a prima facie case that Novosad acted negligently or with actual malice regarding the truth of the "IP thief" statement. Therefore, the trial court erred in denying Novosad's motion to dismiss as to its defamation claim predicated on the Facebook comment. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

## Conclusion

Based on our holdings above, we reverse in part the trial court's order denying Novosad's TCPA motion to dismiss and render judgment dismissing LSG's claims for tortious

19

interference with prospective business, business disparagement, and defamation to the extent those claims are predicated on Novosad's Facebook comment.  We affirm the remainder of the order.  We remand the case to the trial court for further proceedings consistent with this opinion.


_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justice Kelly, and Justice Smith

Affirmed in part, Reversed and Rendered in Part, Remanded

Filed:   July 31, 2020